IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

00-CR-6139CJS

TIMOTHY GIVENS

Defendant.

ORDER

DEC 1 0 2008

In accordance with the Second Circuit's order remanding this
case pursuant to *United States v. Regaldo*, 518 F.3d 143 (2d Cir.
2008), to give this Court an opportunity to indicate whether it
would have imposed a non-Guidelines sentence knowing that it had
discretion to deviate from the Guidelines based upon the Supreme
Court's holding in *Kimbrough v. United States,* 128 S.Ct. 558
(2007), which held that district courts, in imposing sentence, may
consider the disparity between the Guidelines' treatment of crack
and powder cocaine offenses,

NOW, having fully considered that this Court may consider in
imposing sentence the disparity between the Guidelines ranges
applicable to cocaine and cocaine base offenses, and having heard
and considered the arguments of the parties, and upon review of
each of the sentencing factors listed in 18 U.S.C. § 3553(a), this
Court hereby declines to resentence the defendant for the reasons

set forth in the attached bench decision transcript.  Further, the Court determines that the sentence originally imposed was sufficient, but not greater than necessary, to comply with the purposes of sentencing as set forth in 18 U.S.C. 3553(a).

**IT IS SO ORDERED.**

Dated:    December $\underline{10}$ , 2008

HON. CHARLES J. SIRAGUSA
United States District Judge

cc:  Donald M. Thompson, Esq.
     Counsel for Timothy Givens

2

1

```
 1                        UNITED STATES DISTRICT COURT

 2                        WESTERN DISTRICT OF NEW YORK

 3

 4

 5     - - - - - - - - - - - - - - X
       UNITED STATES OF AMERICA   )      00cr6139
 6                                 )
       vs.
 7                                 )   Rochester, New York
       TIMOTHY GIVENS                    December 3, 2008
 8              Defendant.        )        3:00 p.m.
       - - - - - - - - - - - - - - X
 9

10
                       TRANSCRIPT OF PROCEEDINGS
11             BEFORE THE HONORABLE CHARLES J. SIRAGUSA
                    UNITED STATES DISTRICT JUDGE
12

13

14                     TERRANCE P. FLYNN, ESQ.
                       United States Attorney
15                     BY:  DOUGLAS GREGORY, ESQ.
                       Assistant United States Attorney
16                     6200 Federal Building
                       Rochester, New York 14614
17

18
                       DONALD M. THOMPSON, ESQ.
19                     16 W. Main Street, Suite 243
                       Rochester, New York 14614
20                     Appearing on behalf of the Defendant

21                     Carrie Chartier, USPO

22

23     COURT REPORTER:  Karen J. Bush, Official Court Reporter
                        Kenneth B. Keating Federal Building
24                      100 State Street
                        Rochester, New York 14614
25
```

```
 1                        P R O C E E D I N G S

 2                           *        *        *

 3

 4                 THE COURT:   For the record, this is matter of the

 5       United States versus Timothy Givens.   You are Timothy Givens,

 6       is that correct?

 7                 THE DEFENDANT:   Yes.

 8                 THE COURT:   And you're appearing with your

 9       attorney, Mr. Thompson.

10                 THE DEFENDANT:   Yes.

11                 THE COURT:   The Court notes the presence of Mr.

12       Gregory on behalf of the government.   This case is before the

13       Court on the summary order issued by the Second Circuit in

14       which the Second Circuit said, quote, "Accordingly, we now

15       vacate Givens and L. Blue's sentences and remand pursuant to

16       United States vs. Regalado, to allow the district court to

17       determine whether it would impose a different sentence on them,

18       as well as on R. Blue, given its discretion to depart from the

19       Guidelines for crack cocaine."   Referring to United States vs.

20       Regalado, in pertinent part the Second Circuit stated, "We

21       therefore adopt the Crosby mechanism and apply it here where a

22       defendant has not preserved the argument that the sentencing

23       range for the crack cocaine offense fails to serve the

24       objectives of sentencing under 3553(a), we will remand to give

25       the district court an opportunity to indicate whether it would
```

1      have imposed a non-Guideline sentence knowing that it had

2      discretion to deviate from the Guidelines to serve those

3      objectives.  If so, the Court should vacate the original

4      sentence and resentence the defendant.  If not, the Court

5      should state on the record that it is declining resentence and

6      should provide an appropriate explanation for this decision.

7      On appeal, if we have not already done so, we will review the

8      sentence for reasonableness."

9                  In this case, I did receive a memo from the

10     government in which the government opposes any reduction,

11     although I don't know if I agree with your reasoning, Mr.

12     Gregory.  You suggest that because back on, I believe, August

13     3rd of 2005, the Court denied and determined that no

14     resentencing was necessary on the *Crosby* remand, because the

15     Court decided that it would essentially have imposed the same

16     sentence since the Court necessarily determined that a

17     non-Guideline sentence was not appropriate --

18                  MR. GREGORY:  The reason I came to that

19     conclusion, and it is based upon some inference, is that when

20     the case came back on *Crosby*, the Court had the authority to

21     while taking into account the Guidelines sentence Mr. Givens

22     from anywhere from 10 years the statutory minimum up to life

23     and chose to continue its sentence as the sentence previously

24     imposed, so the inference that I make there is that it would

25     continue to do so.

4

1          THE COURT:   But I think the one flaw in that, I
2     think what the Circuit seems to be saying is that at the time
3     you originally sentenced Mr. Givens, at the time you denied
4     resentencing him on the Crosby remand you didn't know you had
5     the authority to depart or, excuse me, to give a non-Guideline
6     sentence based on the crack powder differential now we're
7     telling you that you do.

8          MR. GREGORY:   True, but, frankly, you had the
9     discretion under Crosby to depart from the Guidelines
10    practically for any reason as long as those reasons were stated
11    on the record.

12         THE COURT:   Okay.   In any event, the Court
13    determines that whole point of these regular remands are under
14    Circuit's direction that the district court should consider
15    whether a non-Guideline sentence is appropriate, specifically
16    on the differential between the crack and powder differential.
17    Before we address that, you also in your papers suggest that
18    the Court should anticipate a Whitley application and should
19    adopt the government's logic that the determination in Whitley
20    is in opposite to what we have here.   Specifically the Court
21    declines to do so.   The Court is aware that there is a case
22    currently pending before the Circuit, the Leroy Kelly case,
23    which is dealing with exactly the issue you're suggesting
24    whether or not the statutory minimum on the drug charge which
25    exceeds five years statutory minimum on the gun charge trumps

1    the gun charge and means that the consecutive time is not

2    mandatory.  In any event, the Court declines to address that

3    because that exact issue, I think is being addressed by the

4    Circuit I think this month, so the Court declines to address

5    that.  We're turning now --

6                    MR. THOMPSON:  Can I make a record on that point?

7                    THE COURT:  Yes.

8                    MR. THOMPSON:  I do agree that because we're still

9    pending here on appeal that the *Whitley* determination would

10   apply to this case and although I disagree with the

11   government's reasoning with respect to *Whitley*, I agree that

12   that is a case that is applicable here.  I think the case that

13   you were thinking about was *Williams*, which is factually

14   directly on point with this case, which was argued back in

15   July.

16                   THE COURT:  You're right.

17                   MR. THOMPSON:  And we're still waiting for a

18   decision.

19                   THE COURT:  You're right, *Williams*, I said Kelly,

20   it is *Williams*.

21                   MR. THOMPSON:  And for basically the same reasons,

22   the same arguments that were made in *Williams* with respect to

23   *Whitley* I argue that applies to this case.

24                   THE COURT:  I decline to rule.  You're right, it's

25   the *Williams* case, I was informed it is being argued this

6

1       month.

2                      MR. THOMPSON:  *Williams* was argued in July.  We're

3       awaiting a decision still out of the Second Circuit.  There are

4       other cases.

5                      THE COURT:  I was informed by the Public Defender,

6       Ms. Mariano, there was going to be some argument on this case,

7       an amicus brief.

8                      MR. GREGORY:  There was one filed in mid November.

9                      THE COURT:  In any event, the Court, to the extent

10      that both are asking me to make a ruling, declines to do so.

11      It was remanded specifically on *Regalado*, the Court declines to

12      anticipate what the Second Circuit is going to do on that case.

13      So, now we turn our attention to the *Regalado* remand.

14                     Mr. Givens, I did receive your submission to me

15      and I read it carefully.  Now, I see your family is in here.

16      And as they may or may not be aware, but I'll explain it to

17      them, what the Second Circuit did was send this back to me to

18      consider whether a non-Guideline sentence would be appropriate

19      based on the differential between crack and powder.  So your

20      family understands, the sentences are more severe.  The ratio

21      at least before the November 2007 change was 100 to 1 between

22      crack and powder and the Circuit is directing district courts

23      -- the Supreme Court case in *Kimbrough* said, listen, you have

24      the authority to depart on that differential, on that alone --

25      depart is the wrong word, issue a non-Guideline sentence.

1   However, again, relying on *Crosby*, and it says, "where a
2   defendant has not preserved the argument, the sentencing range
3   for the crack cocaine defense fails to serve the objectives of
4   sentencing under Section 3553(a) we will remand to give the
5   district court an opportunity to indicate whether it would have
6   imposed a non-Guideline sentence knowing it had the discretion
7   to deviate from the Guidelines to serve those objectives."
8   I've considered exactly that and I've determined that I would
9   have imposed the same sentence, that is, I would not have
10  imposed a non-Guideline sentence, and I'll explain to you why.
11  In your particular case, the crack powder differential really
12  does not come into play. I went back and carefully reviewed
13  the presentence report, refreshed my recollection as to the
14  trial testimony, reviewed the submissions that were filed at
15  sentencing. In the original presentence report in paragraph 18
16  -- and the Court recalls the testimony of Marino Guerrero. He
17  was the main supplier of cocaine. There were others and there
18  were objections made to the others, but Mr. Guerrero testified
19  at trial he was the main supplier of cocaine to the
20  organization of which you were a member, that was the
21  testimony. And Guerrero testified that between December of
22  1995 to June of 2000 he sold more than 75 kilograms of cocaine
23  to Blue. If you go under -- so, I'm setting aside the whole
24  cocaine base amount. And you recall at sentencing that I found
25  that because your relevant conduct involved in excess of 1.5

1    kilograms of cocaine base, your offense level based on that was
2    38.    If you go to the new Guidelines, and if you go to 2D1.1 if
3    I just consider the cocaine -- in other words, I want to make
4    it clear my understanding is the Circuit is saying there is
5    this differential between crack cocaine and powder cocaine in
6    terms of the severity of the sentence, that at the time Mr.
7    Givens was originally sentenced when he was back here on a
8    Crosby remand, counsel and Mr. Givens were unaware that based
9    on this differential alone that he could seek a non-Guideline
10   sentence and the Court at the time was unaware at the time of
11   the original sentencing and at the time of the Crosby remand on
12   August 3rd of 2005 that it could give a non-Guideline sentence
13   based on this differential between crack cocaine and powder
14   cocaine.    However, just considering the powder cocaine that was
15   involved in the conspiracy, that is, that was within the scope
16   of the conspiracy in which you participated, it was reasonably
17   foreseeable to you, the Guidelines indicate that at least 50
18   kilograms but less than 150 kilograms of cocaine equate to an
19   offense level of 36.    If I go back to the original presentence
20   report and just consider the cocaine with a base offense level
21   of 36, I increase your offense level by 4 for a role in the
22   offense, and there is no issue as to that at this point, your
23   criminal history category I found to be III, if I go to the
24   Guideline tables just based on the powder cocaine with an
25   offense level of 40 and a criminal history category of III, the

1    recommended range under the advisory Guidelines, which I found
2    to be reasonable on the *Crosby* remand is the same as it was on
3    sentencing of 360 to life. You'll note in the table, with a 42
4    as an offense level and a criminal history category of III, the
5    recommended range is 360 to life. So the reason, and again,
6    I'm carefully looking at the *Crosby* or, excuse me, at the
7    *Regalado* case, as I did on the *Crosby* remand, I now again
8    consider all the sentencing factors set forth in 18 U.S.C.
9    Section 3553 as I have done twice before. In 18 U.S.C. Section
10   3553 I considered the Court should impose a sentence
11   sufficient, but not greater than necessary to comply with the
12   objectives of sentencing as set forth in 18 U.S.C. Section
13   3553. I've considered again the nature and circumstances of
14   your offense, your history and characteristics, I've considered
15   the need for the sentence imposed to reflect the seriousness of
16   your crime, to promote respect for the law and provide just
17   punishment for the offense. I've considered the need for the
18   sentence imposed to deter criminal conduct, to protect the
19   public from further crimes on your part, to provide you with
20   whatever training or care or treatment you need in the most
21   effective manner. I've considered the sentences available
22   under the statute and those recommended under the advisory
23   Guidelines, and I've considered the need to avoid unwarranted
24   sentencing disparities among defendants with similar records
25   who have been found guilty of similar conduct. I've

1    specifically considered that in certain situations the
2    discrepancy between crack and powder might justify a
3    non-Guideline sentence, but in your case, I find, after
4    considering all the factors, again, that I would not, based on
5    that differential, impose a non-Guideline sentence but would
6    have imposed the original sentence.  As I indicated the reason
7    is that in your case that differential really didn't matter.
8    Based on the findings which I made with respect to the
9    presentence investigation report and, again, I will indicate,
10   based on the testimony alone of Mr. Guerrero, which the Court
11   credited in the original sentence that your relevant conduct
12   involved -- excuse me, that the conspiracy in which you
13   participated and the amount which was foreseeable to you was in
14   excess of 75 kilograms, that alone equates to an offense level
15   of 36, with your criminal history category of III, the
16   recommended range under the advisory Guidelines is the same.
17   That is the decision of the Court.  Mr. Thompson, you can have
18   an exception to the Court's ruling.
19                  MR. THOMPSON:  A few things, actually, if I could.
20                  THE COURT:  Certainly.
21                  MR. THOMPSON:  Since the Second Circuit vacated
22   Mr. Givens' sentence and we're back at least for this limited
23   resentencing, I believe that he should have an opportunity to
24   be heard at the time of sentencing.
25                  THE COURT:  He certainly can.  It's a little

11

1    confusing, you point up to something that confused the Court,

2    it says, again, it says, I'm reading it, "we will remand to

3    give the district court an opportunity to indicate whether it

4    would have imposed a non-Guideline sentence knowing it had the

5    discretion to deviate from the Guidelines to serve those

6    objectives.  If so, the court should vacate the original

7    sentence and resentence the defendant.  If not, the court

8    should state on the record that it is declining resentence."

9    So, I don't know what the Circuit said in *Regalado* and has

10   repeated in other cases that I looked at juxtaposes with what

11   they said in this case, but, in any event, I certainly would

12   give -- I did read carefully your submission to me and I would

13   note that it was a lengthy submission and included several

14   letters attached to it.

15                  THE DEFENDANT:  Yeah.

16                  MR. THOMPSON:  I think he did a nice job of that.

17   I think he has refined it some as far as the statement he would

18   like to make to the Court.

19                  THE COURT:  I think you and your family should

20   understand, unless I'm wrong, the case is back in front of me

21   for a limited purpose to determine whether had I known at the

22   time I originally sentenced you that I had the discretion to

23   give a non-Guideline sentence based on this crack/powder

24   differential I would have done so.  Go ahead.

25                  MR. THOMPSON:  Well, before he does, just on that

1   point, so the record is clear, I think the Court is mistaken on

2   that because of the intervening decision in *Whitley* and because

3   that is now the law.  It's my contention the Court does not

4   have the election to disregard the current status of the law

5   upon this sentencing, so.

6                    THE COURT:  I'm missing you.  We're talking right

7   now -- I understand your position on the gun charge.

8                    MR. THOMPSON:  Yes.

9                    THE COURT:  If I follow your position, and you can

10  certainly correct me if I'm wrong, on the gun charge all it

11  would mean it's no longer mandatory that I sentence 60 months

12  consecutive.

13                   MR. THOMPSON:  Yes.

14                   THE COURT:  I could, but it's no longer mandatory.

15                   MR. THOMPSON:  Yes.

16                   THE COURT:  I understand your position on that.

17  Go ahead, Mr. Givens.

18                   MR. THOMPSON:  And you're -- and if I understand

19  the Court's position, you're declining to make any ruling under

20  *Whitley* at this point.

21                   THE COURT:  I'm declining to make any ruling for

22  two reasons.  First, that is not why the case was sent back to

23  me.  It was specifically sent back from the Second Circuit for

24  a limited purpose, a *Regalado* remand, that is reason number

25  one; and, two, I'm declining to rule on that because the exact

1    issue is in front of the Circuit and were I to be persuaded by
2    your argument that it should be that, at least I should
3    consider it to be concurrent and I should sentence it
4    concurrent and the Circuit decides that the Government's
5    position is correct, then I would be venturing into an area
6    where I probably shouldn't go because I could obviously be at
7    odds with the Circuit.

8                 MR. THOMPSON:  I'm more concerned with deciding
9    that the Circuit has decided my position is correct and not
10   having preserved that position.

11                THE COURT:  Let me make this clear, I fully
12   expect, I'm sorry, if the Williams case goes the way the
13   defense urges, this will be back in front of me yet again on
14   what I'm sure will be referred as Whitley remands.  You may be
15   back in front of me again.  But, because of the confusion --
16   and you do raise a point, the Circuit -- and I mentioned it --
17   indicated in their decision that, "accordingly, we now vacate
18   Givens' and Blue's sentence and remand pursuant to United
19   States vs. Regalado to determine whether it would impose a
20   different sentence on them."  It does appear to be somewhat at
21   odds with what they said.

22                MR. THOMPSON:  If I could.  What I read this order
23   to mean was that they were vacating the sentence and what they
24   equated a resentence with would be a different sentence.  You
25   know, if you go back to the other language it says if you

1    resentence, you should do this or that and it sounds like what

2    they're really saying, if you impose a different sentence this

3    is the procedure to follow.  If you impose the same sentence,

4    you impose it, it's a resentence to the same thing.

5              THE COURT:  It is -- it adds because it says here,

6    "accordingly, we now vacate the sentence."  Yet in the regular

7    decision it says, "if the court decides to give a non-Guideline

8    sentence, then under that circumstance, it should vacate the

9    original sentence."

10             MR. THOMPSON:  So, I don't know why they said

11   vacated here, but they did.

12             THE COURT:  Let's go with that.

13             MR. THOMPSON:  That is my point.

14             THE COURT:  Tell me what you want to say.

15             THE DEFENDANT:  Thank you, Judge.

16             THE COURT:  You're following all of this, Mr.

17   Givens?

18             THE DEFENDANT:  Yeah.

19             THE COURT:  Because we're having some trouble.  In

20   any event, go ahead.

21             THE DEFENDANT:  I want to say that years ago after

22   my conviction, you know, Mr. Thompson came to visit me in

23   county jail, and before he left he said something to me that

24   I've held onto until this very day and that is, "always hope

25   for the best and expect the worst."  And it's the very state of

```
 1    mind that I stand here before you with today.  Your Honor,
 2    every one of us in this courtroom today has had the unfortunate
 3    opportunity to endure some kind of personal adversity, whether
 4    it be the death of a loved one, a failed marriage or
 5    relationship, an unfortunate accident or, in my case,
 6    incarceration in prison.  But, through this experience, your
 7    Honor, I've come to learn that it's no so much what you go
 8    through in life, it's how you deal with the situation.  And
 9    what I mean by this, your Honor, is that you can either deal
10    with it with a negative attitude, which will only make what
11    you're going through worse or you can deal with it with a
12    positive attitude, which is what I have chose to do in my
13    situation.  Your Honor, when I went to prison, I did so with a
14    positive attitude and while doing so --
15                THE COURT:  Take your time, Mr. Givens.
16                THE DEFENDANT:  -- and while doing so, I came up
17    with a motto that I live by that I quote to other inmates on a
18    daily basis and I always tell them to, I quote, make the best
19    of your time of incarceration and don't let it get the best of
20    you.  And I also would tell them that it's hard -- I also tell
21    them it's hard to walk a straight line in a crooked prison
22    environment, but if you walk to with your head held high with a
23    positive attitude, it's more than likely you'll make it through
24    your prison term without falling off track.  But if you walk
25    around with your head held down with a negative attitude, it's
```

1    more than likely you're going to fall off course and into
2    something that is going to get you killed or with more time in
3    prison.  And I promote my philosophy to these guys because from
4    my experience these past six years, I've come to realize that
5    that's the only way to beat and defeat a negative situation is
6    to fight it with a positive attitude.  Your Honor, I know that
7    yourself, along with many other federal judges, has had
8    opportunity to send a lot of men, young and old, to prison for
9    long periods of time according to the law.  And I make mention
10   of this to you, your Honor, because after having an unfortunate
11   opportunity to be incarcerated in three federal penitentiaries
12   and being able to watch these guys be able to watch up close
13   and in person inmates beating and stabbing other inmates,
14   raping other inmates, pouring hot oil in their face and
15   disfiguring inmates for life, I can stand here before you
16   today, your Honor, with a straight face and honestly and
17   totally agree with you that there are some guys that need to do
18   every day and month and year in prison.  Some even need the
19   death penalty or just plain to sit there in prison and rot, if
20   you ask me.  But, I also have to say that I've had the blessed
21   opportunity to meet some guys that truly and sincerely took
22   advantage of every opportunity given to them in prison to
23   better themselves in every aspect of their lives.  These guys
24   have become respected role models that are doing their time
25   with dignity and hope of one day getting another opportunity of

1    their life with their kids and family, which they positively

2    earned and deserve and I'm proud to stand before you and

3    confess that I'm one of these redeemed men, your Honor.

4              Your Honor, I would like to respectfully address

5    Mr. Gregory.  I would like to say, Mr. Gregory, I know it's

6    your right and your job to oppose any request for any type of

7    relief that me and my attorney petition for, and I sincerely

8    respect and understand that right of yours.  But I would like

9    to say that I am no different or no better than you and vice

10   versa, you're no different or better than me.  And I

11   respectfully say this because we have all sought after a second

12   chance as something in our lifetime.  Let me give you a

13   scenario that I'm quite sure you would be able to relate to.

14   During my time I've been doing a lot of reading and studying

15   and I learned that a significant number of the judges and

16   lawyers and prosecutors today, they didn't pass a bar exam on

17   the first try.  And I say that to make a point that just

18   because they failed on the first try doesn't mean that they was

19   a bad person or that they're not qualified or deserve to be

20   that judge, that prosecutor or that lawyer.  What that first

21   failure means, they made a mistake somewhere along the way.

22   Give me one minute, your Honor.

23              THE COURT:  Certainly.

24              THE DEFENDANT:  Like I said, all the first failure

25   means, they made a mistake somewhere along the way.  It happens

1    to all of us because we're humans.  So, what do they do now

2    after failing their first bar exam?  Well, they start all over

3    by regrouping and redeeming themselves, searching and finding

4    where they made the error and correcting it and I'm quite sure

5    you'll agree with me on this, Mr. Gregory, that some of today's

6    most prominent judges, prosecutors and lawyers didn't become

7    who and what they are today on their first bar exam, but for

8    some their second or third bar exam.  That is where I'm at in

9    my life, seeking another opportunity in life to help raise my

10   daughters and help my mother by being a successful citizen at

11   the same time.  Mr. Gregory, I took advantage of every

12   opportunity that the prison had to offer.  I completed many

13   programs, maintained clear conduct, I've written 10 books in

14   which I've been offered several publishing deals for.  I've

15   been blessed by my friend of more than 10 years Mr. Andrew

16   Brown, who is the President of the Bar Association and Ms.

17   Michelle Hutchinson with the hope of incorporating and starting

18   my own publishing and greeting card company since I've been

19   locked up, so all of this should clearly demonstrate to you and

20   to the courts to turn this negative into a positive end of the

21   story.  So, all I ask of you, Mr. Gregory, instead of opposing

22   me, give me the benefit of the doubt and I promise I will not

23   disappoint you.

24            Your Honor, I would like to wrap this up by saying

25   that nobody in this world is perfect by any means.  We've all

1    made some mistakes and we'll continue to do so in our lifetime.
2    Your Honor, I didn't come here expecting to go home today
3    because I'm not a narrow minded naive or non-realistic person.
4    But, I did come here today with hope of receiving a lesser
5    sentence.  Your Honor, I know that the crime that I was tried
6    and convicted for may not call for a lesser sentence and a
7    lesser sentence may not seem just enough for the crime that I
8    was tried and convicted on, but I just want to say this, that a
9    lesser sentence seemed like a million years when you have a
10   daughter that you ain't seen in six years and you're not able
11   to be there to help care for her.  It just seems like a lesser
12   sentence still seems like a lifetime.  But, your Honor, I
13   accept full responsibility for not being able to be there for
14   my daughter like I'm supposed to be because that is not neither
15   your burden or the Court's, that's my problem.  But I just
16   plead with the Court to give me another opportunity to be the
17   father that I desire and want to be that I haven't been able to
18   be and be that son and successful productive citizen that I'm
19   determined and destined to be.  You know, your Honor, this
20   situation in prison has purposefully driven me and I ask you
21   for another chance and I promise you, I promise I won't let you
22   down.  Thank you.

23            THE COURT:  Thank you, Mr. Givens.  I am impressed
24   by your words and but, as I tried to explain to you and your
25   family, this case was sent back to me for a specific purpose

1       and, as I tried to explain, the conspiracy for which you were
2       convicted involved -- there was a large scale drug conspiracy.
3       This wasn't a case where there was a small amount of drugs and
4       based just on the amount of cocaine, if I took that, if I was
5       sentencing you and it was after *Crosby* and after *Regalado*, I
6       would have to determine your relevant conduct and I'm trying to
7       explain the relevant conduct for the conspiracy in which you
8       participated as was established in the presentence report and I
9       adopted, certainly that statement in the presentence report as
10      a finding of fact involved 75 kilograms of cocaine, forgetting
11      the crack cocaine, and for the reasons I've explained, I'm
12      declining to resentence, imposing the same sentence that I did.
13      And it's not that I'm unsympathetic to you and really to your
14      family.   I wish your words could be taken to anyone thinking
15      about getting involved in the conduct that you did because you
16      point to an all too true fact that you're doing the time, but
17      in a real sense, your family is, too.   Unfortunately it took
18      something like this to make you realize this, but they're
19      suffering, maybe not to the same degree that you are, but
20      they're deprived of your companionship and holidays are there
21      and you're not there.   But, unfortunately, that's the cost of
22      engaging in criminal conduct.   And you also were convicted, you
23      know, of possessing a firearm in furtherance of a drug
24      trafficking crime.

25                        In any event, the Court declines to resentence for

1    the reasons stated and imposes the same sentence that it

2    originally did and on remand that is 420 months on the drug

3    conviction and 60 months consecutive on the firearm conviction,

4    understanding full well that if the Circuit agrees with the

5    defense position in the *Williams* case, that I fully expect this

6    matter to be back in front of me on a *Whitley* remand and you

7    will argue and Mr. Thompson will argue that the 60 months

8    should run consecutively not concurrently.   That is the

9    decision of the Court.

10            MR. THOMPSON:   Can I, for the record, because the

11   Circuit's decision order says the sentence was vacated that may

12   be read to require me to at least upon pain of waiver to

13   reassert those claims that we had asserted in our original

14   sentencing submission.  For example, the Court said earlier on

15   there was an adjustment in role of offense of 4, that is not in

16   issue.   It's my contention that those points are as previously

17   raised are in issue and specifically the weight amount as being

18   a judge found as opposed to a jury-found fact, the amount

19   foreseeable being judge found as opposed to jury found and the

20   other determinations that we had argued in our previous

21   submission should be reasserted for purposes of the record at

22   this time as are fully asserted now.

23            THE COURT:   I understand that and the Circuit can

24   clarify whether if the same sentence -- if the Court declines

25   to impose a new sentence whether that requires me to sentence

1     ab initio or not.  In any event, the Court notes your
2     exceptions and notes to the extent the Circuit says, no, this
3     is a full-blown resentencing that you're asserting all the
4     objections you did initially, including the weight and role.
5     Thank you very much.
6                    THE DEFENDANT:  Thank you.
7                    PROBATION:  Just, Judge, to be clear, should a new
8     J&C be prepared and his supervised release reimposed?
9                    THE COURT:  I don't know.  I guess what is the
10    government's position, Mr. Gregory?
11                   MR. GREGORY:  I think.
12                   THE COURT:  What did we do in the *Crosby* cases?
13                   MR. GREGORY:  All we did was submit an order
14    saying that you -- we submitted an order indicating that you
15    would not now impose a sentence that is nontrivially different
16    than the one you imposed and you signed it.
17                   THE COURT:  I noted this before when the issue has
18    come up before, "if so, the court should vacate the original
19    season and resentence the defendant."  Now it doesn't say the
20    Court should vacate and resentence the defendant and give
21    specific reasons.  On the other hand, it says the Court should
22    state on the record it's declining, and which I did, and should
23    provide an appropriate explanation for its decision.  So any
24    order/J&C needs to explain the reasoning, it may be appropriate
25    to attach a copy of the transcript.

1          MR. GREGORY:   Which is what we did on the *Crosby*
2     to the J&C.
3          THE COURT:   I don't know if it's a full -- Mr.
4     Thompson points out what the Circuit said in its remand, I
5     pointed out what the remand said in *Regalado*, so it's the
6     government's position that it's not a full-blown resentencing.
7          MR. GREGORY:   Judge, I think, frankly, we're
8     constrained by what the order from the Second Circuit says and
9     not what *Regalado* says.   Follow me?   *Regalado* gives some
10    instruction, but, unfortunately, from the Second Circuit, we
11    have this remand with an order in it.   I think the Court may be
12    required to follow that order as opposed to what was said in
13    *Regalado*.
14         THE COURT:   Let me ask you, what does that mean?
15    If that means follow the order and sentence -- let's play that
16    out.   It's going to come up in other cases.   If that is correct
17    and the sentence is vacated, there is no sentence, are we
18    proceeding from the get go again?
19         MR. GREGORY:   No, I don't think we are.
20         MR. THOMPSON:   It's my position we are.
21         MR. GREGORY:   My position is we're definitely not
22    starting from scratch.   We're back -- and after you decide this
23    one particular issue that has been sent back on *Regalado*, then
24    you impose the sentence, whether it's the same or whether it's
25    not at odds with what *Regalado* says, that is what the remand

1    says.

2                    MR. THOMPSON:   It it's my position you can't say

3    vacated and all the stuff applies, vacated is vacated.

4                    THE COURT:   Let's clarify what the defense

5    position is and government's position.  Correct me if I'm

6    wrong, Mr. Thompson, and you, Mr. Gregory, your position is the

7    sentence is vacated that so that's what, that we start all over

8    again, that I have to review the presentence report?  Is it

9    your position you can file additional objections?

10                   MR. THOMPSON:   Yes, it's my position that we're

11   back where we were before the initial sentencing took place.

12                   THE COURT:   And your position, we're not.

13                   MR. GREGORY:   Absolutely not.

14                   THE COURT:   I understand.  The record is clear so

15   you both have your positions.  The Court's position is they

16   start off by saying they're adopting the *Crosby* mechanism, the

17   *Crosby* mechanism was not a full blown starting sentencing all

18   over again.  I understand the language of the Circuit.  The

19   Court is specifically saying it would impose the same sentence.

20   To the extent that means I'm reimposing the same sentence, I'm

21   reimposing the same sentence.  If the government believes based

22   on that the correct way is to proceed by order, proceed by

23   order.  The defense has its objection.  Thank you very much.

24                             *   *   *

25                        CERTIFICATE OF REPORTER

1

2       I certify that the foregoing is a correct transcript of the

3    record of proceedings in the above-entitled matter.

4    /s Karen J. Bush

5
     Official Court Reporter
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25